IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DELTA AIRLINES, INC. as sponsor and fiduciary of the DELTA ACCOUNT-BASED HEALTHCARE PLAN, | ) ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION FILE |
| v. | ) ) | NO. 1:13-CV-00220-SCJ |
| TANYA PRADD f/k/a TANYA DAVIS and MONGE & ASSOCIATES, | ) ) ) | |
| Defendants. | ) ) | |

**MONGE & ASSOCIATES' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT UNDER
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(5) and 12(b)(6)**

Monge & Associates ("Monge"), Defendant in the above-captioned case, pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), moves this District Court to dismiss the Complaint filed by Plaintiff Delta Airlines, Inc. for insufficient service of process and failure to state a claim upon which relief can be granted.

I.    Introduction

This Motion concerns the reach of liability to attorneys representing parties in third party tort actions where the parties are plan beneficiaries under the

10748616

Employee Retirement Income Security Act (ERISA). In the instant case the lawsuit seeks to have employees reimburse Delta's healthcare plan ("Plan") for any medical expenses in the event the employee collects compensation from a third-party regardless of whether or not the employee has been completely compensated. The main issue here is can a Plan enforce a legal contractual remedy of reimbursement of full value of medical expenses it has paid against the employee's attorney who is not a party to the contract, who did not receive notice of the Plan's reimbursement claim and who is not holding funds.

Co-defendant and former Delta employee Tanya Pradd was involved in a motor-vehicle accident that resulted in injuries and medical expenses. Pradd ultimately retained Monge to pursue a tort claim against the other driver. With Monge's help, Pradd was able to secure a settlement eight months after the lawsuit had been filed. Monge retained its agreed portion of the settlement as its contingency fee pursuant to its contract with Pradd and disbursed the balance as directed by Pradd.

In bringing this lawsuit, Delta claims it can reach not only Pradd's settlement proceeds, but also pursue Monge for reimbursement of Pradd's medical expenses. As a non-employee, Monge has never and will never receive any benefits under the Plan. Monge never contracted with or otherwise agreed to

reimburse Delta.  In fact, Delta acknowledges that it did not inform Monge about the Plan provision until well after the settlement occurred.

Yet, under Delta's theory of liability, it can seek reimbursement at anytime from any attorney *even well after such funds have been legally disbursed*.  In effect, Delta's claim would make every personal injury attorney an insurer and guarantor of sums owed the Plan for a seemingly indefinite period of time.

Delta's complaint fails to acknowledge the wealth of authority underpinning third-party claims under ERISA.  Monge's conduct was not only reasonable, but also was required per the ethical obligations an attorney owes a client.  Delta slept on its rights to enforce the Plan and now wants to hold Monge accountable.  Delta cannot sustain a claim for equitable relief and the claim fails as a matter of law.

II.    Facts and Procedural Posture

This motion requests dismissal of Delta's Complaint on two distinct grounds:  failure to state a claim and insufficient service of process.  Each section of this memorandum will be bifurcated, and each issue will be addressed independently.

A.    Failure to State a Claim

The Plan provides medical benefits to Delta employees.  (Comp. ¶7.)  Pradd participated in the Plan and was a beneficiary thereof.  (*Id.* at ¶5.)  The Plan states

it has the "right to recover from, and reimbursed by, the Covered Person for all amounts the plan has paid . . . as a result of that injury . . . including the full amount the Covered Person received from any Responsible Party." (*Id.* at ¶11; Ex. B 58.) The Plan provides for both constructive trusts over and liens on settlements. (Comp. ¶12.) Specific to liens, the Plan provides that such lien "may be enforced against any party who possesses funds or proceeds representing the amount of benefits paid by the plan, including . . . the Covered Person's representative or agent . . . and/or any other source possessing funds representing the amount of benefits paid by the plan." (*Id.*; Ex. B 59). Pradd was a Covered Person under the Plan. (*See* Comp. ¶5.) The Plan required Pradd to cooperate with its reimbursement and subrogation rights. (Comp. ¶15.)

On March 19, 2009, Pradd was injured in a motor-vehicle accident. (*Id.* at ¶16.) Delta alleges it has paid medical expenses on behalf of Pradd as a result of the accident. (*Id.* at ¶17.) Delta claims it notified Pradd of its reimbursement rights under the Plan in March 2010. (*Id.* at ¶19.) Delta also claims it communicated with Pradd and her then-legal counsel of its potential reimbursement rights under the Plan. (*Id.* at ¶20.)

Thereafter, Pradd changed counsel. (*Id.* at ¶22.) Delta learned of the change in counsel, but claims it was unable to ascertain the identity of Pradd's new

counsel due to Pradd's lack of cooperation.  (*Id.* at ¶¶21-22.)  Notwithstanding Pradd's alleged lack of cooperation, the identity of Pradd's new counsel was readily available to Delta and anyone else who reviewed the publicly-available court documents filed in connection with Pradd's lawsuit.[1]  (*See id.* at ¶¶22-23.) Despite the availability of said public records, Delta alleges it could not determine the identity of the new attorney and thus was *unable* to place the new attorneys on notice of the reimbursement rights under the Plan.  (*Id.* at ¶22.)

Monge was Pradd's new counsel who Delta could not seem to identify.  (*Id.* at ¶24.)  With Monge's help, Pradd settled her lawsuit stemming from the motor vehicle-accident in August 2011.  (*Id.* at ¶23.)

Six months later in February 2012, Delta made its first contact with Monge. (*Id.* at ¶¶23-25.)  It was not until these first communications well after settlement that Delta advised Monge of the Plan's reimbursement provisions.  (*Id.* at ¶25.) Delta does not allege Pradd informed Monge of the Plan or any claim of reimbursement.  (*See generally id.*)  Even though the complaint fails to allege a source of the alleged awareness and expressly excludes Delta per the belated initial

---

[1] The Plan expressly provides that Delta has the right to conduct an investigation regarding the injury and notify the beneficiary's attorneys of its lien.  (Comp. Ex. B 60, 62.)

communication in February 2012, Delta disingenuously claims Monge was "fully aware of the Plan's interest at the time" of settlement.  (*Id.* at ¶¶24-25, 31.)

Monge was not an employee of Delta and thus was never a beneficiary of the Plan.  (*See id.* at ¶¶6, 7.)  As a non-beneficiary of the Plan, Monge was not bound by terms of the Plan.  (See *id.*)  As a third-party, Monge was not required to cooperate with Delta with respect to any provision in the Plan even after learning of the reimbursement provision in February 2012.  (*See id.* at ¶15.)  Monge never agreed, whether expressly or implicitly, to reimburse Delta for any of Pradd's medical expenses.  (*See id.* at ¶¶26-31.)

### B.    Insufficient Service of Process

Aaron Michelman is an associate attorney at the Defendant law firm Monge & Associates.  (A. Michelman Dec. at ¶2.)  Per the summons reading "Attn: Aaron Michelman," Mr. Michelman was served with summons and complaint on or about January 24, 2013.  (*Id.* at ¶3.)  He is not and never has been the registered agent for Monge.  (*Id.* at ¶4.)  Mr. Michelman has never claimed to have authority to accept service on behalf of the law firm.  (*Id.* at ¶3.)

Scott Monge is the registered agent for the law firm.  (S. Monge Dec. at ¶3.)  Mr. Monge was never served with process in this civil action.  (*Id.* at ¶4.)  Mr. Monge never waived service on behalf of the law firm.  (*Id.* at ¶5.)  Neither Mr.

Monge nor Monge & Associates ever authorized Mr. Michelman to accept service of process on behalf of Monge & Associates.  (*Id.* at ¶6; A. Michelman Dec., at ¶5.)  In sum, Delta's failure to properly effectuate service of process on Monge mandates dismissal.

III.    Argument and Citation of Authority

A.    Failure to State a Claim

1.    Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   While this pleading standard does not require "detailed factual allegations," "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   In order to withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).   A complaint is plausible on its face when the plaintiff pleads factual content necessary for the Court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.*

2.      While the Supreme Court Authorizes ERISA Claims

Against Third-Parties in Specific Situations, Monge Does

Not Satisfy Any of the Requirements Necessary to Assert

a Plausible Claim of Relief

The Supreme Court altered the ERISA landscape in *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000) by extending relief under 29 U.S.C. § 1132(a)(3) to non-plan beneficiaries.  The Supreme Court in *Harris Trust* explained ERISA liability for non-beneficiaries as follows:

> [T]he common law of trusts sets limits on restitution actions against defendants other than the principal "wrongdoer." Only a transferee of ill-gotten trust assets may be held liable, and then only when the transferee (assuming he has purchased for value) knew or should have known of the existence of the trust and the circumstances that rendered the transfer in breach of the trust. Translated to the instant context, the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful.

*Id.* at 251.  Some federal courts, including the Northern District of Georgia, have distilled this language into a three element test for bringing a claim against a third-party non-beneficiary attorney: (1) funds rightfully belonging to a plan were unlawfully transferred; (2) the attorney had knowledge of the circumstances that rendered the transfer unlawful; and (3) the plan seeks appropriate equitable relief, such as restitution or imposition of constructive trust.  *AirTran Airways Inc. v.*

*Elem*, 771 F. Supp. 2d 1344, 1350 (N.D. Ga. 2011).  These requirements will be handled in turn.[2]

(a)    The Transfers At Issue Were Not Unlawful

While Delta's allegations are phrased generally and encompassing both defendants, the allegedly unlawful transfer presumably concerned the transfer of settlement proceeds from Monge to Pradd.  Many courts looking at the liability of attorneys in similar situations have found that the transfer from attorney to client is not unlawful *unless* the attorney agreed to be bound or otherwise acquiesced in a plan's reimbursement right.  *Treasurer v. Goding*, 692 F.3d 888 (8th Cir. 2012) (holding an attorney who acknowledged but did not agree to be bound to an ERISA agreement was not liable); *T.A. Loving Co. v. Denton*, 723 F. Supp. 2d 837, 840 (E.D.N.C. 2010) ("[A]n attorney may be liable under § 502(a)(3) only where the attorney is a party to the plan, the attorney agrees to abide by plan provisions, or the attorney's wrongdoing or intentional effort enables the beneficiary to avoid plan provisions."); *Md. Elec. Indus. Health Fund v. Levitt*, 155 F. Supp. 2d 482, 484 (D. Md. 2001) ("Does an attorney retained by an ERISA plan beneficiary who

---

[2] It should be mentioned that many of these issues seem to be in a state of perpetual remolding.  Courts freely look outside their jurisdictions for guidance and attempt (with varied success) to synthesize it with precedent from their own jurisdiction. In light of the vicissitudes of the case law, some of the authority *infra* could be applied to a different section with equal strength.  Ultimately, the result is the same and there is no cognizable basis to bring this ERISA action against Monge.

receives settlement  funds (or other funds in recovery) from a third party tortfeasor have any duty enforceable under ERISA to account to the ERISA Plan for the proceeds received, to the extent of the Plan's known claim? The answer . . . is no."); *see also*, *Mid Atlantic Med. Services, Inc. v. Do*, 294 F.Supp.2d 695, 703 (D. Md. 2003); *UFCW Local 1776 v. Deboer*, 2008 U.S. Dist LEXIS 73499, at *4 (E.D. Pa. 2008).

As the Eighth Circuit discussed in *Treasurer*, an attorney that merely acknowledges, but does not sign a lien/subrogation agreement, does not create a professional or contractual duty with a plan. *Treasurer*, 692 F.3d at 895. Without some basis to demonstrate an attorney owed a duty, a plan may not contend an attorney is obligated to remit any funds or otherwise protect a plan's interest. *Id.*

The Eleventh Circuit has also expressed reservations about assigning any liability to independent attorneys for beneficiaries. In *Chapman v. Klemick*, 3 F.3d 1508, 1511-12 (11th Cir. 1993), the Eleventh Circuit considered whether an attorney who represents a beneficiary in a separate personal injury action becomes a fiduciary under ERISA when, in settlement of his client's personal injury claim, the attorney receives funds against which the trust fund asserts subrogation rights. *Id.* at 1508. The Circuit Court found against establishing fiduciary status because the attorney only owed a duty to his client and not the ERISA-based plan. *Id.* at

1511.    The Eleventh Circuit highlighted the importance the attorney's ethical obligation to his client and the implicit agreement to avoid competing allegiances. *Id.*

Assuming arguendo that Delta's allegations are true, the Complaint fails to allege Monge was bound by the terms of the Plan.   As expressly noted in the Complaint, the Plan only covers a "Covered Person," and a non-employee, Monge, does not meet the definition.   (Comp. ¶11.)   As a non-beneficiary, Monge never agreed, whether expressly or implicitly, that it would hold any monies in trust for the benefit of Delta.   Without being bound or acquiescing to the terms of the Plan, Delta cannot plausibly contend that Monge owed either Delta or the Plan a duty. Because Monge owed no duty, any transfer from Monge to Pradd could not be unlawful or wrongful.   In fact, as pointed out in *Chapman*, Monge was ethically obligated to represent its client's interests and to avoid a conflict of interests (with the Plan's interests).

The Ninth Circuit's opinion in *CGI Techs. & Solutions, Inc. v. Rose*, 683 F.3d 1113 (9th Cir. 2012) (copy attached), is also helpful in demonstrating when a transfer is wrongful.[3]   In *CGI*, NLE, a law firm, recovered damages on behalf of its client Rose, the plan participant.   Rose acknowledged the plan's payment of

---

[3] It should not be too surprising that *CGI* and this case share many common issues and arguments since the attorneys for the plan/plaintiffs is the same in both actions.

benefits but refused reimbursement. Instead, Rose requested that her attorneys place the disputed amounts in trust until entitlement could be resolved. *Id.* at 1116. The plan/plaintiff later claimed the transfer to the trust was an unlawful transfer thus subjecting NLE to ERISA liability. *Id.*

The Ninth Circuit based its holding for NLE on the reasonableness of the law firm's conduct under the circumstances.[4] *Id.* at 1118. NLE was aware of competing claims of entitlement and thus was placed in a situation of competing obligations. *Id.* Like *Chapman*, the Ninth Circuit was concerned with introducing into "ERISA a duty on the part of the beneficiary's counsel that unreasonably interferes with traditional and lawful attorney-client interactions." *Id.*

Under the Ninth Circuit's reasoning in *CGI*, the unlawfulness of the transaction is contingent on whether or not Monge's conduct was reasonable given the circumstances. As alleged in the Complaint, Delta did not determine Monge was representing Pradd until at least six months after settlement. Despite Delta's contention that Monge was "fully aware of the Plan's interest at the time . . . [of]

---

[4] In reaching its decision, the Ninth Circuit expressly disagreed with *Bombardier Aero. Emple. Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough, P.C.*, 354 F.3d 348 (5th Cir. 2003), which extended liability to a law firm based on the theory that it was an *in rem* action to establish a constructive trust and the funds in trust were still in constructive possession of the beneficiary. For this theory to be applicable to Monge, the funds would need to be in trust, which Delta does not allege.

settlement," it fails to allege a single source of this critical information to Monge. (Comp. ¶31.)  If Delta did not notify Monge, and there is no other allegation of how Monge became "fully aware," Delta's contention in ¶31 is not plausible.

Per *CGI*, it was not unlawful for Monge to transfer settlement funds to Pradd in or about August 2011.  Unlike NLE which knew of the plan's claim of entitlement, Monge is not (plausibly) alleged to have had any information at or before the time of settlement to warrant placing the money in trust as in *CGI* or *Bombadier*.  And, given the Eleventh and Ninth Circuits' concerns of an attorney's duty to his client, a refusal to transfer said funds to Pradd would certainly have constituted a breach of its duty to "promptly distribute all portions of the funds or property as to which the interests are not in dispute."  Ga. R. Prof. Resp. 1.15(I)(d). Under the circumstances, Monge's conduct was not only reasonable in light of the lack of notification, but also mandated as an ethical obligation Monge owed Pradd. In short, there was nothing unlawful about any transfer and thus Delta cannot state a claim for equitable relief under 29 U.S.C. § 1132(a)(3).[5]

---

[5] Presumptively, Delta will contend the transfer of Monge's contingent legal fee from the IOLTA account to its general operating account constitutes an unlawful transfer.  This was equally reasonable in light of Monge's contingency arrangement with Pradd and Delta's belated notification.  Delta cannot argue Monge had some obligation to maintain its fee in trust between recovery in August 2011 and Delta's notification in February 2012.

       (b)     Delta's Admitted Failure to Notify Monge of its Reimbursement Right Abrogates Its Claim

In addition to lack of unlawfulness, Delta will never be able to demonstrate Monge had knowledge of the Plan's reimbursement provision.  Again, the Complaint fails to allege how Monge became aware of Delta's interest.  On the contrary, Delta only alleges that *it did not notify* Monge at or near the time of settlement of the reimbursement provision.

In *AirTran Airways Inc. v. Elem*, 771 F. Supp. 2d 1344 (N.D. Ga. 2011), AirTran alleged in its complaint that it sent two letters in 2007 to counsel for the beneficiary informing him of the reimbursement provision.  *Id.* at 1348.  AirTran also alleged in the complaint that it periodically checked in with counsel to determine the status of the case.  *Id.*  As a result, the district court had little difficulty finding counsel had knowledge of the provision prior to the May 2010 settlement.  *Id.* at 1351.  Unlike *AirTran*, Delta's Complaint is devoid on any plausible allegation of knowledge.

*AirTran* is not the exception but the rule on this issue.  However, the vast majority of cases mention knowledge in passing or by implication.  *See, e.g.*, *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356, 360 (2006); *CGI Technologies and Solutions, Inc. v. Rose*, 683 F.3d 1113, 1118 n.2 (9th Cir. 2012) (contrasting the

situation wherein the attorney pays himself out of funds known to be disputed by a plan); *Md. Elec. Indus. Health Fund v. Levitt*, 155 F.Supp.2d 482, 484 (D. Md. 2001) (stating in passing that the attorney "was aware of the subrogation claim asserted by the Plan").

Even the Sixth Circuit's opinion in *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009), a case that casts perhaps the widest net for third-party liability, points to evidence in the record whereby the company notified the attorney prior to settlement of its reimbursement provision. *Id.* at 462 n. 2. In the absence of any allegation regarding a timely notification, Delta's claim cannot be sustained.[6]

        (c)    Monge No Longer Possesses the Funds in an Identifiable Fund and Thus Delta's Claim Does Not Seek Equitable Relief

Even if Delta could demonstrate knowledge, the Complaint still fails to state a claim because ERISA is limited to equitable relief and not legal relief. 29 U.S.C. § 1132(a)(3). The legal/equitable distinction under ERISA is no stranger to the

---

[6] In light of Delta's claim of *equitable* relief, this Court must account for Delta's failure to notify Monge of its rights before filing a lawsuit claiming Monge failed to preserve the settlement. Equity will not create a trust "at the insistence of a party who lacks clean hands with respect to those matters concerning which he seeks relief." *Griggs v. Griggs*, 242 Ga. 96, 97 (Ga. 1978). Delta has unclean hands for failure to determine Pradd's new counsel, which was easily ascertainable in public court records. With any diligence, Delta could have better attempted to protect its interest. Delta should bear the burden of its dilatory actions.

Supreme Court and many cases have dealt with the seemingly constant fractures in treatment among the Circuits.

The most important decision for purposes of this motion occurred in *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006). The *Sereboff* decision came in the wake of *Great-West Life & Annuity, Ins. Co. v. Knudson*, 534 U.S. 204 (2002) where the Court found that when a plan/plaintiff sues to recover funds not in the possession of the beneficiary, the action seeks legal relief. *Id.* at 212. Without possession of the funds, *Knudson* reasoned that equitable restitution (whether constructive trust or equitable lien) on particular property was not possible. *Id.* at 214. The plan/plaintiff was actually seeking general liability for the benefits the plan had conferred upon the beneficiary. *Id.* *Knudson* found this to be legal relief and thus not a proper claim under 29 U.S.C. § 1132(a)(3). *Id.*

*Sereboff* distinguished *Knudson* because the plan sought specifically identifiable sums within the possession and control of the beneficiary. *Sereboff*, 547 U.S. at 362-63. Unlike *Knudson*, the plan in *Sereboff* was not attempting to impose personal liability (i.e. legal relief) for a contractual obligation to pay money. *Id.* at 363. The identifiable sums were the portion of the tort settlement due under the terms of the ERISA plan set aside and preserved in the Sereboffs' investment account. *Id.*

The Eleventh Circuit later addressed a lingering issue from both *Knudson* and *Sereboff*: could a plan/plaintiff recover funds in the possession of a non-beneficiary third-party by suing that party directly? *Admin. Comm. for the Wal-Mart Stores, Inc. v. Horton*, 513 F.3d 1223, 1228-29 (11th Cir. Ga. 2008). In *Horton*, the child of a covered employee suffered injuries in a motor vehicle accident and obtained a settlement. *Id.* at 1224. Because of the child's age, the probate court ordered the child's mother as conservator of the settlement funds. *Id.* In her capacity as conservator, she took possession and deposited the funds into a trust account. *Id.* The plan then sued the mother to recover the funds she held in her capacity as conservator as reimbursement for the child's medical expenses.

In following both *Sereboff* and *Knudson*, the Eleventh Circuit stated, "the most important consideration is not the identity of the defendant, but rather that the settlement proceeds are still intact, and thus constitute an identifiable res that can be restored to its rightful recipient." *Id.* at 1229. Wal-mart satisfied this requirement by asserting title and right of possession of particular property possessed by the mother in her capacity as conservator for her child. *Id.* at 1228. Specifically, "[t]he money [mother] holds in trust has been identified as belonging in good conscience to [the plan] by virtue of the Plan's terms, and the money can clearly be traced to a particular fund in the defendant's possession." *Id.* at 1228-

29.   As a result, Wal-mart properly sought *equitable* relief and thus was able to pursue the claim.  *Id.* at 1229.

The situation is quite different from Delta's claim of relief against Monge. As pointed out in the Complaint, Monge informed Delta that it was no longer holding funds derived from the settlement.  (Comp. ¶29.)  This should have come as no surprise to Delta in light of the significant delay between settlement and Delta's initial notification.   And, as pointed out *supra*, attorneys are bound to ethical obligations in Georgia to release funds owed to clients without delay.

While Delta alleges the funds are in "Defendants' possession," the complaint fails to allege where these identifiable funds are held by Monge.  It is not plausible to allege that funds from an August 2011 settlement would still remain in Monge's trust account in February 2012.  This is particularly true given that Monge had no reason to maintain the funds in trust and informed Delta that it no longer held the funds.  Delta's Complaint is nothing but a formulaic recitation of the elements of a cause of action under ERISA and thus violates the *Iqbal*/*Twombly* standard.

The situation here is similarly distinguishable from both *AirTran Airways Inc. v. Elem*, 771 F. Supp. 2d 1344, 1350 (N.D. Ga. 2011) and *Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009).   In both cases, the attorneys knew of the reimbursement provision *prior* to receiving the settlement funds, but they chose to

ignore the claims.  As a result, the legal fees retained by the attorneys from the settlements were found to be subject to equitable relief.  *AirTran*, 771 F. Supp. 2d at 1352; *Longaberger*, 586 F.3d at 469; *see also*, *Greenwood Mills, Inc. v. Burris*, 130 F. Supp. 2d 949, 960 (M.D. Tenn. 2001) (holding that "[a] lawyer who is fully aware of his client's obligations under an ERISA plan to honor the subrogation interest of his employer may be held liable under § 1132(a)(3)" and cited in *Longaberger*).[7]

Under the facts alleged in the Complaint, this Court would need to find that a plan can impose equitable relief against a non-beneficiary for funds moved out of a trust account to a general operating account as legal fees at any time following a settlement.  Any commingling here is not the result of Monge's refusal to adhere to Delta's claims like *AirTtran* and *Longaberger*.  Rather, the commingling here is solely the result of Delta's failure to act.  Monge should not be made to remain in perpetual anxiety that a legal fee retained as part of a rightful settlement could be

---

[7] It should be pointed out that while *AirTran* cites *Longaberger* as favorable law, many cases offer a more critical review of the opinion. On this specific issue, one court questioned "how an equitable lien by agreement could arise when the attorney never entered into any agreement with the Plan." *Crawford & Co. Med. Ben. Trust v. Repp*, 2012 U.S. Dist. LEXIS 29365, at *12 (N.D. Ill. 2012). *Crawford* adheres to stricter pleading requirements: (1) that the funds in that person's possession are identifiable, (2) not dissipated, and (3) in some manner still in the control of the plan participant. *Id.* at *12-13 (citing *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680, 687 (7th Cir. 2003)).

snatched away at some indeterminable point following the settlement. Because there is no identifiable res in Monge's possession that can be clearly traced to the plan, Delta's claim could only seek recovery from Monge's general assets. Such a claim can never constitute an equitable claim of relief. *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1094-95 (9th Cir. 2012). As a result, Delta has failed to state a claim upon which relief could be granted and dismissal is warranted.

3.    Delta's    Claim    Implicates    Important    Policy Considerations    Underlying    the    Attorney-Client Relationship

While many cases give policy implications little or no weight, the circumstances before this Court on this motion to dismiss warrant attention. As indicated above, the Eleventh Circuit has already expressed concern of imposing liability on third-parties under ERISA. *Chapman v. Klemick*, 3 F.3d 1508 (11th Cir.1993). *Chapman* points out that extending liability will make personal injury lawyers less likely take on beneficiaries as clients. *Id.* at 1511. Equally critical of extending liability to attorneys, one District Court noted that a "contingency fee may be the key to courthouse door for the injured or aggrieved." *T.A. Loving Co.*

*v. Denton*, 723 F. Supp. 2d 837, 842 n.1 (E.D.N.C. 2010) (quoting *In re Abrams &*

*Abrams, P.A.*, 605 F.3d 238 (4th Cir. 2010)).

The Eleventh Circuit also astutely observed that fewer attorneys representing beneficiaries in personal injury lawsuits would result in a reduction in reimbursements for a plan. *Chapman*, 3 F.3d at 1511-12. In effect, attorneys provide vital services to ERISA plans and they should be compensated accordingly. Delta's Complaint fails to acknowledge the symbiotic relationship that exists between lawyers and ERISA plans.

Finally, as mentioned above, this Court cannot ignore the ethical obligations an attorney owes his client. Again, Monge was ethically obligated to release the funds to Pradd. Monge's ethical obligations to Pradd cannot be suspended until Delta chooses to obtain information readily available in public court records. By granting this motion, this Court can remind plan fiduciaries that they cannot sleep on their rights.

### 4.    ERISA Preempts Delta's Unjust Enrichment Claim

Delta's additional (or alternative) cause of action for unjust enrichment is preempted under ERISA. Defensive preemption, as opposed to complete preemption, is a substantive defense justifying dismissal of preempted state law claims. *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006); *Butero v.*

*Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999). A state law claim is defensively preempted under ERISA if it *relates* to an ERISA plan. 29 U.S.C. § 1144(a). As indicated by the statute, the sweep of ERISA preemption is broad. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) (stating that ERISA possesses "extraordinary pre-emptive power"); *Jones*, 457 F.3d at 1179; *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012) ("Its broad preemptive scope reflects Congress's intent to lodge regulation of employee benefit plans firmly in the federal domain.").

In recognition of this expansive reach, a state law claim is preempted when it affects relations among principal ERISA entities. *Jones*, 457 F.3d at 1180. This rule also applies to state law claims involving non-ERISA entities. *See, e.g.*, *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1565 (11th Cir. 1987) (stating that allowing the state law claim "would upset the regulation of plan benefits intended by Congress"); *see also*, *Hampers v. W.R. Grace Co., Inc.*, 202 F.3d 44, 52 (1st Cir. 2000) (stating a "cause of action relates to an ERISA plan when a court must evaluate or interpret the terms of the ERISA-regulated plan to determine liability under the state law cause of action").

There is no question that Delta's unjust enrichment claim against Monge affects the relations between Pradd and Delta, the ERISA entities. Since Delta

would only be entitled to one recovery, any funds recovered from Monge would affect the amount of funds recoverable from Pradd (and vice-versa). In addition, the state law claim would upset the regulation of plan benefits because it would presumptively extend regulation (via liability) to third-party attorneys. Delta's claim is thus preempted and ripe for dismissal.[8]

### B.    Delta Failed to Serve Monge In Accordance With Rule 4

In a challenge under Rule 12(b)(5), the defendant bears the initial burden of pointing out specifically how the service was insufficient. *Carr v. Mid-Atlantic Fin. Servs.*, 2010 U.S. Dist. LEXIS 86289, at *10 (N.D. Ga. 2010). The burden then shifts to plaintiff to demonstrate service was validly effectuated. *Id.*

Under Rule 4, a plaintiff can serve a corporation by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. Fed R. Civ. P. 4(h)(1)(B).[9] "Unless the [corporate] defendant has waived service, the plaintiff must personally effect service upon the defendant, and service by mail is

---

[8] If the ERISA claim is dismissed, this Court should not exercise jurisdiction over the state-law claim pursuant to 28 U.S.C. § 1367(c) as the basis for federal jurisdiction is not present.

[9] Although Rule 4 provides for service on a corporation as provided for by state law, O.C.G.A. § 14-2-504 cannot salvage Delta's failure to serve the registered agent for Monge.

insufficient under 4(h)(1)(B)." *Georgia ex rel. Saunders v. Mortg. Elec. Registration Sys.*, 2011 U.S. Dist. LEXIS 37982, at *15-16 (N.D. Ga. 2011).

As explained in Section II(b), *supra*, the only service of process in this civil action occurred on or about January 24, 2013. As indicated in the summons, Delta attempted to serve a copy of a summons and complaint on Monge & Associates by leaving the papers with Aaron Michelman, an associate attorney with the law firm. Mr. Michelman has never had or claimed to have had authority to accept service on behalf of the law firm. (Michelman Aff. ¶3.) Delta failed to serve the law firm's agent, Scott Monge. (Monge Aff. ¶4.) Delta's service of process patently fails the straightforward requirements of the Federal Rules of Civil Procedure. The complaint should be dismissed pursuant to Rule 12(b)(5) due to insufficient service of process.

IV.    Conclusion

WHEREFORE Monge & Associates respectfully requests that this Court dismiss Plaintiff's Complaint pursuant to Rules 12(b)(5) & 12(b)(6) with prejudice.

Respectfully submitted this 28th day of February, 2013.

| | |
|---|---|
| 4000 SunTrust Plaza<br>303 Peachtree Street, N.E.<br>Atlanta, Georgia  30308-3243<br>Phone:  (404) 614-7400<br>Fax:  (404) 614-7500<br>cmast@hptylaw.com<br>jwieseman@hptylaw.com | HAWKINS PARNELL<br>THACKSTON & YOUNG LLP<br><br>*/s/ Joseph H. Wieseman*_____<br>Christine L. Mast<br>Georgia Bar No. 461349<br>Joseph H. Wieseman<br>Georgia Bar No. 558182<br>*Counsel for Monge & Associates* |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| DELTA AIRLINES, INC. as sponsor and Fiduciary of the DELTA ACCOUNT-BASED HEALTHCARE PLAN, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE |
| | ) | |
| v. | ) | NO. 1:13-CV-00220-SCJ |
| | ) | |
| TANYA PRADD f/k/a TANYA DAVIS And MONGE & ASSOCIATES, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day electronically filed the foregoing **Defendant Monge & Associates' Memorandum in Support of Motion to Dismiss Plaintiff's Complaint Under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6)** with the Clerk of Court using the CM/ECF system, which will automatically send e-mail documentation of such filing to the following attorneys of record:

Nicolette J. Lee, Esq.
Littler Mendelson, P.C.
3344 Peachtree Road, NE, Suite 1500
Atlanta, Georgia  30326
nlee@littler.com

10748616

Noah G. Lipschultz, Esq.
Littler Mendelson, P.C.
1300 IDS Center
80 South 8th Street
Minneapolis, Minnesota 55402-2136
nlipschultz@littler.com

I also certify that, pursuant to LR 5.1B, ND Ga., the above document was

prepared in Times New Roman 14 pt. font.

This 28th day of February, 2013.

**HAWKINS PARNELL
THACKSTON & YOUNG LLP**

*/s/ Joseph H. Wieseman*
_____

| | |
|---|---|
| 4000 SunTrust Plaza | Christine L. Mast |
| 303 Peachtree Street | Georgia Bar No. 461349 |
| Atlanta, GA 30308-3243 | Joseph H. Wieseman |
| (404) 614-7400 *(phone)* | Georgia Bar No. 558182 |
| (404) 614-7500 *(fax)* | *Counsel for Defendant* |
| cmast@hptylaw.com | *Monge & Associates* |

10748616

- 2 -